IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIA C., a minor, by and through her parent      :     CIVIL ACTION
and natural guardian,  IRIS NEREIDA CAMACHO   :
                                     :
         v.                    :
                                     :

THE SCHOOL DISTRICT OF PHILADELPHIA     :     NO. 02-4336

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' FINAL
STATEMENT OF PLAINTIFFS' CLAIM FOR ATTORNEYS' FEES AND EXPENSES

     Pursuant to this Honorable Court's Order dated October 1, 2003, Defendant School

District of Philadelphia (the "District"), through undersigned counsel, hereby submits its

response to Plaintiffs' Completed Record and Factual Narrative.[1]

     A.    FACTUAL BACKGROUND

     1.    On June 24, 1996, a due process hearing was held.  Prior to the proceedings, _an_

_agreement was reached between the parties_ that an independent assessment of Maria's special

educational needs would be conducted and discussed at a subsequent IEP meeting.  (See true

copy of Notes of Testimony dated June 24, 1996, pp. 3, 5-6, 12-16, attached hereto and marked

as **Exhibit "A"**.)

     2.    On May 13, 1997, a due process hearing was held.  Prior to the proceedings, _an_

_agreement was reached between the parties_ that, _inter alia_, an IEP meeting would be convened

with the parents in attendance to determine an appropriate placement for Maria.  (See true and

---

[1] The Court's Order dated October 1, 2003, _inter alia_, stated that "Plaintiff shall, within ten days, submit to this Court and to the defendant a current statement and explanation of the amounts of attorney's fees and expenses sought."  On October 14, 2004, Plaintiff filed "Plaintiff's Response to Court's Order for Plaintiffs' Attorney's Final Hours Expended on Behalf of Maria C."  Plaintiffs' cover letter to the Court dated October 10, 2003, stated that "a further more detailed analysis of attorney hours expended .  .  .  will be available upon Plaintiff's filing a Rule 56 Motion for Summary Judgment next week."  On October 20, 2003, Plaintiff then filed papers titled "Plaintiffs' Completed Record and Factual Narrative."   This last filing purports to be Plaintiffs' final response in compliance with the Court's Order of October 1, 2003.

correct photocopy of the Hearing Officer Report dated May 28, 1997, attached hereto and marked as **Exhibit "B"**.)

3.      On June 9, 1998, a due process hearing was held.  Prior to the proceedings, _an agreement was reached between the parties_ that, *inter alia*, an IEP meeting would be convened by August, 1998.  (See true copy of Notes of Testimony dated June 9, 1998, p. 3, attached hereto and marked as **Exhibit "C"**.)

4.      On November 12, 1998, the due process hearing held on June 9, 1998, was reconvened.  Prior to the proceedings, _an agreement was reached between the parties_ that, *inter alia*, an IEP meeting would be convened by January 13, 1999.  (See true copy of Notes of Testimony dated November 12, 1998, pp. 33, 38, attached hereto and marked as **Exhibit "D"**.)

5.      On December 13, 1999, a due process hearing was held.  Prior to the proceedings, _an agreement was reached between the parties_ that, *inter alia*, Maria would receive after school tutoring, the last IEP would be translated from Spanish to English, and Spanish software comparable to the English versions attached to the IEP would be located .  (See true copy of Notes of Testimony dated December 13, 1999, pp. 5, 15-28, 41-42,  attached hereto and marked as **Exhibit "E"**.)

6.      The agreement reached between the parties at the hearing on December 13, 1999, was summarized by the hearing officer in a signed document titled "_Agreement_."  (See true and correct photocopy of the Agreement signed by Hearing Officer George F. Golden (emphasis added), and the accompanying cover letter dated January 4, 2000, addressed to Plaintiffs' attorney, both of which are attached hereto and marked as **Exhibit "F"**.)[2]

---

[2] Contrary to Plaintiffs' assertion in Plaintiffs' Completed Record and Factual Narrative (at p. 10, para. 41), the record _does_ _not_ state that the Agreement was approved as an Order of the Hearing Officer.  The hearing officer's cover letter clearly describes the document as "the Agreement for the special education settlement for Maria Yesenia Camacho" and the document itself (at p. 2) states "The Agreement."  Moreover,  the hearing officer stated during

7.      On January 25, 2002, a due process hearing was held.  The hearing adjourned _with the parties agreeing_ that an IEP meeting would be held in five days on January 30, 2002, and that the date of the next hearing would be determined during a conference call on January 28, 2002.  (See true copy of Notes of Testimony dated January 25, 2002, pp. 29-31, attached hereto and marked as **Exhibit "G"**.)

8.      On March 14, 2002, the due process hearing that began on January 25, 2002, was reconvened.  "[A]fter taking several hours of testimony" the hearing was adjourned to be reconvened at a later date.  (See true copy of Notes of Testimony dated March 14, 2002, p. 234, attached hereto and marked as **Exhibit "H"**.)

9.      On May 20, 2002, the due process hearing that adjourned on March 14, 2002, was reconvened.  Six District witnesses testified before the hearing was adjourned to be reconvened at a later date.  (See true copy of Notes of Testimony dated May 20, 2002, p. 481, attached hereto and marked as **Exhibit "I"**.)

10.      On June 10, 2002, the due process hearing that adjourned on May 20, 2003, was reconvened.  Subsequent to an _in camera_ interview of Maria, the hearing officer announced on the record that "[i]n an off the record (sic) discussion that has occurred over the past three or so hours[,] **_we have come to _un_ _agreement_ of the issues in this case_**."  (See true copy of Notes of Testimony dated June 10, 2002, p. 525, lines 11-14, attached hereto and marked as **Exhibit "J"**; emphasis added.)

11.      In a letter dated June 12, 2002, the hearing officer wrote: "On June 10, 2002, we entered into a Consent Decree on the record in this matter.  Therefore, I relinquish all jurisdiction in this matter.  By copy of this letter I am notifying the Office for Dispute Resolution that this

---

the hearing that "[i]t will not be necessary for me to make a decision in this case . . . because the statements that are stipulated to on the record speak for themselves."  (See Exhibit "E" at p. 42, lines 2-5.)  Query: If the hearing officer states that he did not have to "make a decision in this case", how could there be an order?

matter is closed."  (See true and correct photocopy of the letter dated June 12, 2002, addressed to the parties' attorneys, attached hereto and marked as **Exhibit "K"**.)[3]

12.    On June 27, 2002, Plaintiffs' attorney made an initial written "demand for attorney's fees in the sum of not less than $50,000 . . . dating back not less than two years."  He stated further that "you can expect that I will pursue the claim by filing in federal court not later than the close of business tomorrow."  (See true and correct photocopy of the June 27th letter attached hereto and marked as **Exhibit "L"**.)

13.    By letter dated July 8, 2002, the District's attorney informed Plaintiffs' attorney that "the District is unable to respond without detailed, itemized time sheets.  We will be able to respond upon presentation of appropriate documentation for our review."  (See true and correct photocopy of the July 8th letter attached hereto and marked as **Exhibit "M"**.)

B.    <u>PROCEDURAL HISTORY</u>

14.    On July 8, 2002, Plaintiffs commenced the instant action by filing a Summons and Complaint whereby they plead, *inter alia*, that "Plaintiffs prevailed in *the administrative proceedings* conducted in this matter, and, in the course thereof, incurred attorney's fees and other costs in the total of not less than $50,000."   (Complaint, p. 3, para. 22; emphasis added.) *However, Plaintiffs did not serve the District with the Complaint until <u>three</u> <u>(3)</u> <u>months</u> <u>later, on</u> October 8, 2002.*  The District filed its Answer on October 22, 2002.

---

[3] Although the letter refers to the agreement reached between the parties as a "Consent Decree", the hearing officer clearly viewed it as an agreement between the parties.  For example, in response to Plaintiffs' attorney's request to move into evidence additional documents that he did not offer or even possess at the time of the June 10th hearing, the hearing officer denied the request by stating:

"The consent decree is based on the evidence that has been produced, the testimony of the multiple witnesses that have been called in this hearing and the exhibits that have been discussed.  It is my belief that no additional documents are necessary and therefore the consent degree (sic) – *it will not change the information or the consent decree <u>**as an agreement**</u>*, so therefore they are not necessary."

See, Exhibit "J", p. 539, lines 2-13 (emphasis added).

15.    On October 1, 2003, this Honorable Court filed a Memorandum and Order whereby it denied the District's Motion to Dismiss.[4]  The Court's Memorandum stated in part that "the extensive documentary record which has now been developed makes clear that plaintiffs are entitled to be reimbursed for at least some of their counsel fees and expenses."[5] (See true and correct photocopy of the October 1, 2003, Memorandum and Order attached hereto and marked as **Exhibit "N"**.)

16.    The Court's Order gave Plaintiffs ten (10) days to submit to the Court and the District " .  .  . a current statement and explanation of the amounts of attorney's fees and expenses sought.  Within ten days thereafter, *defendant [District] may challenge any or all of the fees and expenses*."  (**Exhibit "N"**; emphasis added.)

17.    On October 2, 2003, this Honorable Court filed an Order denying Plaintiffs' Motion for a Scheduling Order, Plaintiffs' Motion Requesting Time to File a Motion for Summary Judgment, and Plaintiffs' Motion to Amend the Record.  (See true and correct photocopy of the October 2, 2003, Order attached hereto and marked as **Exhibit "O"**.)

18.    On October 14, 2003, Plaintiff filed "Plaintiff's Response to Court's Order for Plaintiffs' Attorney's Final Hours Expended on Behalf of Maria C."  Plaintiffs' attorney's cover letter to the Court dated October 10, 2003, stated that "a further more detailed analysis of attorney hours expended .  .  . will be available upon Plaintiff's filing *a Rule 56 Motion for*

---

[4] The District's Motion to Dismiss was filed on August 8, 2003.  The District argued that (1) more than a year had passed and Plaintiffs still had not provided the District with any documentation whatsoever in support of their claim for attorney's fees and expenses; and (2) more importantly, Plaintiffs were not entitled to an award of attorney's fees under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), because, pursuant to very recent federal case law interpreting the applicable fee shifting section of the IDEA, they are not a "prevailing party."
[5] The Court's position in this regard is in complete disagreement with the recent holdings on this issue of the U.S. Supreme Court, and the U.S. Court of Appeals for the Third and Second Circuits. (See, p. 6, *infra*, and the attached Memorandum of Law in Opposition to Plaintiffs' Final Statement of Plaintiffs' Claim For Attorneys' Fees and Expenses, Section I(B), "Case Law," at 2.)

*Summary Judgment* next week."[6]  (See true and correct photocopy of the October 10, 2003, letter attached hereto and marked as **Exhibit "P"**; emphasis added.)

19.    On October 20, 2003, Plaintiff then filed papers titled "Plaintiffs' Completed Record and Factual Narrative."   This last filing purports to be Plaintiffs' final response in compliance with the Court's Order of October 1, 2003.[7]

The District hereby submits its "challenge" to Plaintiffs' claim for attorney's fees and expenses under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. (the "IDEA"), and in support thereof offers the attached Memorandum of Law.  Plaintiffs are not entitled to an award of attorney's fees or expenses under the IDEA because they are not a "prevailing party."  Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 159 L.Ed.2d 855 (2001); John T. v. The Delaware Cnty. Intermediate Unit, 318 F.3d 545 (3d Cir. 2003); J.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267 (3d Cir. 2002); and, J.C. v. Regional School Dist.10, Bd. of Educ., 278 F.3d 119 (2d Cir. 2002).

---

[6] As of the date of the filing of the instant document, Plaintiffs have not filed a Motion for Summary Judgment.
[7] This filing is what the Court requested of Plaintiffs by its Order dated October 1, 2003.  Plaintiffs' response was overdue and consists of more than 200 pages covering the period from January 3, 1997, to October 20, 2003, inclusive of new counsel's fees for alleged work done *solely* on the instant federal claim for attorney's fees and expenses.  Plaintiffs seek $64,005.63, for fees and expenses in connection with the administrative process, and an additional $22,786.90, for legal work in connection with the instant claim only, for a total claim of $86,792.53.

WHEREFORE, Defendant School District of Philadelphia prays this Honorable Court to enter judgment in its favor and against Plaintiffs, finding, as a matter of law, that Plaintiffs are not a "prevailing party" under the facts of this matter.  In the event the Court determines that Plaintiff is a "prevailing party" and is entitled to an award of attorney's fees, Defendant respectfully requests the Court to schedule an evidentiary hearing to determine the amount of the award.

RESPECTFULLY SUBMITTED,

_____

C. REGINALD JOHNSON, ESQUIRE
Assistant General Counsel
School District of Philadelphia
Office of General Counsel
2130 Arch Street, 5th Floor
Philadelphia, PA 19103-1390
(215) 299-7676
Attorney for Defendant,
School District of Philadelphia

Dated: October 29, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIA C., a minor, by and through her parent           :        CIVIL ACTION
and natural guardian,  IRIS NEREIDA CAMACHO            :
                                                       :
                    v.                                 :
                                                       :
THE SCHOOL DISTRICT OF PHILADELPHIA                    :        NO. 02-4336

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' FINAL
STATEMENT OF PLAINTIFFS' CLAIM FOR ATTORNEYS' FEES AND EXPENSES

Defendant School District of Philadelphia (the "District"), through undersigned counsel,

respectfully requests this Honorable Court to enter judgment in its favor and against Plaintiffs,

finding, as a matter of law, that Plaintiffs are not a "prevailing party" under the facts of this

matter and, therefore, are not entitled to an award of attorneys' fees.  In support thereof, the

District hereby submits this Memorandum of Law.

I.      APPLICABLE LAW

        A.      Statutory Law.

        The Individuals with Disabilities Educational Act, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"),

provides in relevant part at §1415 as follows:

> **(i) Administrative procedures**.  (1)  In general. (A) Decision made in hearing.
> A decision made in a hearing conducted pursuant to subsection (f) or (k)
> shall be final, except that any party involved in such hearing may appeal
> such decision under the provisions of subsection (g) and paragraph (2) of
> this subsection.
> (B)  Decision made at appeal.  A decision made under subsection (g) shall
> be final, except that any party may bring an action under paragraph (2) of
> this subsection.
> (2)  Right to bring civil action. (A)  In general.  Any party aggrieved by the
> findings and decision made under subsection (g), and any party aggrieved
> by the findings and decision under this subsection, *shall have the right to*

> bring a civil action with respect to the complaint presented pursuant to this section, <u>which action may be brought in any State court of competent jurisdiction or in a district court of the United States</u> without regard to the amount in controversy.
> (B)  Additional requirements.  In any action brought under this paragraph, the court –
> > (i) shall receive the records of the administrative proceedings;
> > (ii) shall hear additional evidence at the request of a party; and
> > (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.
> *(3) <u>Jurisdiction of district courts; attorneys' fees</u>.  (A)  In general.  The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.*
> *(B) <u>Award of attorneys' fees</u>.  In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to parents of a child with a disability <u>who is the prevailing party</u>.*

20 U.S.C. § 1415(i) (emphasis added).  Thus, as a threshold matter, § 1415(i) requires a plaintiff to have (1) brought a civil action in either a State court or a federal district court, *and* (2) to have been the "prevailing party."  Plaintiffs in the instant case did not bring an IDEA action in either a State court or a federal district court, and as discussed below, are not a "prevailing party" pursuant to federal decisional law.

        B.        <u>Case Law</u>.

        In <u>Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. of Health & Human Resources,</u> 532 U.S. 598, 121 S.Ct. 1835, 159 L.Ed.2d 855 (2001), the U.S. Supreme Court addressed the "prevailing party" issue with respect to the fee-shifting provisions of the Fair Housing Amendments Act of 1988 ("FHAA") and the Americans with Disabilities Act of 1990 ("ADA").  In <u>Buckhannon</u>, the Court engaged in an exhaustive analysis of decisional precedent to determine whether or not to reject plaintiff's "catalyst theory" argument for the award of attorneys' fees under the statutory provisions of the FHAA and the ADA.  The "catalyst theory" stands for the proposition that if, as a result of  a plaintiff's lawsuit, the defendant voluntarily

changes its behavior in a manner that provides to plaintiff the relief sought, then plaintiff should

be deemed a "prevailing party" and receive attorneys' fees even though there was no judgment

on the merits or court-ordered consent decree.  The Court held that the "catalyst theory" was not

a permissible basis for the award of attorney's fees under the FHAA and the ADA because "[i]t

allows an award where there is no judicially sanctioned change in the legal relationship of the

parties."  *Id*., 532 US 598, 605.  The Court explained its holding further by stating that:

> Now that the issue is squarely presented, it behooves us to reconcile the plain
> language of the statutes with our prior *holdings*.  We have only awarded
> attorney's fees where the plaintiff has received a judgment on the merits, or
> obtained a court-ordered consent decree,  . . . .  Never have we awarded
> attorney's fees for a nonjudicial "alteration of actual circumstances."

*Id*. (citations omitted; emphasis in original).  Moreover, the Court noted its position in an earlier

opinion where it stated:

> [W]e said that Congress had not "extended any roving authority to the
> Judiciary to allow counsel fees as costs or otherwise whenever the courts
> might deem them warranted."  To disregard the clear legislative language and
> the holdings of our prior cases on the basis of such policy arguments would be
> a similar assumption of a "roving authority."

Although the <u>Buckhannon</u> holding only dealt with the FHAA and the ADA "prevailing

party" provisions, the U.S. Court of Appeals for the Third Circuit has addressed the issue in its

direct application to the IDEA attorney's fees provision.  And, the Third Circuit has held that the

holding of <u>Buckhannon</u> applies to the IDEA as well as the FHAA and the ADA.[1]

First, in  <u>J.O. v. Orange Twp. Bd. of Educ.</u>, 287 F.3d 267 (3d Cir. 2002), a mother sought

"prevailing party" attorney's fees in federal District Court under the IDEA subsequent to her

---

[1] "We hold that *Buckhannon* applies to attorney's fee claims brought under the IDEA fee-shifting provision.  In
doing so, we follow the reasoning articulated by the Second Circuit in *J.C. v. Regional School Dist. 10, Bd. of Educ.*,
278 F.3d 119 (2d Cir.2002).
     We agree with *J.C.* that *Buckhannon* heralded its wider applicability – although it dealt only with the fee-shifting
provisions of FFHA (sic) and the ADA."  <u>John T. v. Delaware Cnty. Intermediate Unit</u>, 318 F.3d 545, 555 (3d Cir.
2003).  *Accord*, <u>J.C. v. Regional School Dist. 10, Bd. of Educ.</u>, 278 F.3d 119 (2d Cir. 2002).

3

having obtained an order from a state Administrative Law Judge ("ALJ") that required defendant

Board of Education to immediately reinstate her suspended son and, upon the consent of the

parties, the Board was ordered by the ALJ to hire a behavioral specialist to perform an

assessment of the child and establish a plan for his educational needs.  The mother's motion for

summary judgment regarding prevailing party attorney's fees was denied.  On appeal before the

Third Circuit, the court affirmed the decision of the District Court finding that the lower court

did not err or abuse its discretion by ruling that there had been no "determination on the merits"

rendered during the administrative proceedings before the ALJ.  Thus, it could not be said that

plaintiff was the "prevailing party" because a final decision had not been rendered.

Second, and most relevant, is John T. v. The Delaware Cnty. Intermediate Unit, 318 F.3d

545 (3d Cir. 2003).  In this case, because defendant intermediate unit refused to provide special

education services to plaintiff as required under Pennsylvania law unless he transferred to a

public school from a private school, plaintiff brought suit in U.S. District Court for the Eastern

District of Pennsylvania under IDEA.  After hearing testimony and argument, the District Court

issued a preliminary injunction that ordered defendant to provide plaintiff with specific special

education services such as speech and occupational therapy, a teacher's aide, and an itinerant

teacher for his current program at the private school.  Over the next several months, defendant

met with plaintiff and his parents to develop an Individualized Education Plan ("IEP").

Subsequently, an IEP was established and defendant issued a Notice of Recommended

Assignment ("NORA").

Because plaintiffs were dissatisfied with the IEP and NORA, they requested and received

an administrative due process hearing.  The hearings continued off and on over a period of

several months until the hearing officer issued an order for defendant intermediate unit to alter

4

plaintiff's IEP to permit him to remain at the private school.  Although defendant successfully

caused the hearing officer's order to be overturned on appeal by the state review panel, the

District Court ordered defendant to Show Cause why it should not be held in contempt prior to

the state review panel issuing its reversal ruling.  The District Court found defendant

intermediate unit in civil contempt of the preliminary injunction and defendant appealed the

contempt order.

Prior to the end of the school year, *plaintiff and defendant were able to agree to an IEP*

pursuant to which plaintiff transferred to a public school.  Plaintiff then filed to voluntarily

withdraw its complaint *and moved for attorney's fees under IDEA §1415(i)(3)(B) as the*

*"prevailing party."*   The District Court *denied* plaintiff's request for attorney's fees ruling that

he was not a "prevailing party."

Quoting extensively from <u>Buckhannon</u> and <u>J.O.</u>, *supra*, and agreeing with the

embracement of  <u>Buckhannon</u> by the Second Circuit in <u>J.C. v. Regional School Dist.10, Bd. of</u>

<u>Educ.</u>, 278 F.3d 119 (2d Cir. 2002), the <u>John T</u>. court concluded that plaintiff was not a

"prevailing party" stating that:

> Having concluded that *Buckhannon* controls the interpretation of "prevailing
> party" as it is used in §1415(i)(3)(B), we next consider whether John T. is,
> in fact, a prevailing party to whom attorney's fees may be awarded.
> Because we conclude that he is not, we will affirm the District Court's
> Order denying him attorney's fees.  In doing so, however, we adopt a
> somewhat broader view of "prevailing party" than did the District Court
> which held that a prevailing party must have (1) received a judgment on the
> "merits" of the litigation, or (2) obtained a court-ordered consent decree.
> Our broader view is consistent with our holding in *Truesdell v. Phila. Hous.*
> *Auth.*, 290 F.3d 159 (3d Cir.2002), where we held that a *stipulated*
> *settlement* could confer prevailing party status under certain circumstances.
> *See* id. at  165 (finding stipulated settlement "judicially sanctioned" under
> *Buckhannon* where it (1) contained mandatory language, (2) was entitled
> "Order," (3) bore the signature of the District Court judge, not the parties'
> counsel, and (4) provided for judicial enforcement).

John T., 318 F.3d 545, 558 (emphasis in original).

Moreover, as noted above with respect to the requirements of IDEA §1415(i),[2] plaintiff first must bring an action in State or federal District Court order to have standing to seek attorneys' fees as a "prevailing party" under §1415(i)(3)(B).  In this regard, the John T. Court wrote:

> . . . Congress sought to provide fees only to those who prevailed *with respect to an IDEA claim.*  When the IDEA fee-shifting provision authorizes attorneys fees (sic) "in any action or proceeding brought under this section," it not only limits the universe to which it applies but also clarifies the *type* of proceeding on which a party must "prevail."

Id. at 560 (emphasis in original).

In concluding its analysis of why John T. was not a "prevailing party," the Third Circuit addressed the issue of obtaining a mutually acceptable IEP by stating:

> Finally, John T. is not a prevailing party by virtue of his having obtained an acceptable IEP.  Although John T. undoubtedly realized an objective of his litigation upon obtaining an acceptable IEP which placed him in the public schools, this result was not "judicially sanctioned" as required by *Buckhannon*.  532 U.S. at 605, 121 S.Ct. 1835.  John T. and the DCIU developed the IEP through negotiations out of court, and no court has endorsed the agreement with a "judicial imprimatur."  Id.
>
> \*  \*  \*
>
> Moreover, we read *Buckhannon* to reject the "catalyst theory" whole hog.
>
> \*  \*  \*
>
> We will also affirm the District Court's denial of the petition for attorney's fees.  Under *J.O.* and *Buckhannon*, which we apply expressly to the IDEA fee shifting provision, John T. is not a "prevailing party" by virtue of his having obtained the Preliminary Injunction, the Contempt Order or the acceptable IEP.

Id. at 560-561.

---

[2] *See*, Statutory Law, subsection A, *supra*, at pp. 1-2.

II.    ARGUMENT

    A.    Plaintiffs Are Not Entitled To An Award Of Attorney's Fees Under The IDEA, Because They Did Not Bring A Civil Action In A State Court Or A Federal District Court Prior To Filing The Instant Claim.

Section 1415(i) sets forth a process consisting of two administrative final decision-making events – an initial hearing (§1415(i)(1)(A)), and an appeal hearing (§1415(i)(1)(B)), *followed by the aggrieved party's right to bring a civil action in either State court or a federal District Court on the merits of his or her case* (§1415(i)(2)(A)). In the event that the parent(s) of a child with a disability are the "prevailing party" in *an IDEA civil action brought in either a State court or a federal District Court*, they may, in the court's discretion, be awarded reasonable attorney's fees as part of their costs to litigate their civil action in court. In the case at bar, Plaintiffs did not bring a civil action in either a State court or a federal District Court. Consequently, the "Award of attorneys' fees" provision at §1415(i)(3)(B) is *not available to Plaintiffs*. The only claim they have brought in court is the instant claim for attorney's fee and expenses. The claim for attorneys' fees is not the right to an IDEA "civil action" contemplated or permitted by §1415(i)(2)(A). In this regard the Buckhannon Court stated:

> We have also stated that "[a] request for attorney's fees should not result in a second major litigation," and have accordingly avoided an interpretation of the fee-shifting statutes that would have "spawn[ed] a second litigation of significant dimension.

Buckhannon, *supra*, at 609 (citations omitted; brackets in original).

    B.    As A Matter Of Law, Plaintiffs Are Not A "Prevailing Party" And, Therefore, Are Not Entitled To An Award Of Attorney's Fees Under the IDEA

Not only have Plaintiffs failed to meet the foregoing threshold requirement of Section 1415(i), they fail to meet the second requirement as well – the status of "prevailing party." *Each and every one* of the due process hearings discussed in paragraphs 1 through 10, of Defendant's

Response in Opposition to Plaintiffs' Final Statement of Plaintiffs' Claim for Attorney's Fees and Expenses, *supra*, resulted in <u>an</u> <u>agreement</u> <u>between</u> <u>the</u> <u>parties</u>, absent any "judicial imprimatur"[3] or being "judicially sanctioned." For instance, subsections (i)(1)(A) and (i)(1)(B) of IDEA §1415 require "[a] decision [be] made in a hearing" and "a decision [be] made [on appeal]," respectively. However, none of the due process hearings resulted in the hearing officer making a decision because the parties entered into voluntarily agreements <u>each</u> <u>time</u>. During the due process hearing on December 13, 1999, the hearing officer stated that "[i]t will not be necessary for me to make a decision in this case . . . because the statements that are stipulated to on the record speak for themselves." (See attached Exhibit "E" at p. 42, lines 2-5.)

Moreover, in <u>John T. v. Delaware Cnty. Intermediate Unit</u>, *supra,* the Third Circuit adopted "a somewhat broader view of 'prevailing party' than did the District Court" in that matter. *Id*., 318 F.3d 545, 558. "Our broader view is consistent with our holding in *Truesdell v. Phila. Hous. Auth. . . .* where we held that a *stipulated settlement* could confer prevailing party status under certain circumstances. (finding stipulated settlement "judicially sanctioned" under *Buckhannon* where it (1) contained mandatory language, (2) was entitled 'Order,' (3) bore the signature of the District Court judge, not the parties' counsel, and (4) provided for judicial enforcement). *Id*.

Although referred to as a "Consent Decree" in the hearing officer's letter that consisted of only two sentences[4], the settlement agreement reached between the parties at the final due process hearing on June 10, 2002, completely fails the <u>John T</u>. "broader view" test as a stipulated

---

[3] "A defendant's voluntary change of conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." <u>Buckhannon</u>, *supra,* at 605 (emphasis in original).

[4] See attached Exhibit "K" and paragraph 11, of Defendant's Response in Opposition to Plaintiffs' Final Statement of Plaintiffs' Claim for Attorney's Fees and Expenses, *supra*.

settlement that confers "prevailing party" status on Plaintiffs.  First, the terms of the "consent decree" were not reduced to a writing, but only stated on the record,[5] and do not "contain mandatory language."  Second, because it was not reduced to a writing, the "consent decree" was not "entitled 'Order'."  Third, because this matter was not before a court, and because the "consent decree" was not reduced to a writing, it does not bear the signature of a judge.  And fourth, the agreement does not provide for "judicial enforcement."

Although IDEA §1415(i)(3)(B) grants a District Court discretionary authority to award attorney's fees to a "prevailing party," the decisional law of the Third Circuit as set forth in J.O., and John T., *supra,* make such an award in the instant case a clear abuse of discretion.

 C. Plaintiffs' Claim For Attorney's Fees And Expenses Grossly Exceeds Any Standard of Reasonableness Under The Factual Circumstances Of This Matter.

Defendant firmly believes the established IDEA "prevailing party" case law of the U.S. Supreme Court and the U.S. Court of Appeals for Third Circuit requires the Court to find against Plaintiffs.  However, should this Honorable Court elect to rule in favor of Plaintiffs – which it should not because that would be contrary to established precedent – Defendant respectfully requests that the following discussion be given due consideration in fashioning an award.

 1. Plaintiffs' Award, If Any, Should Be Limited to Reasonable Attorney's Fees Only, Exclusive of Expenses, And Only For Services Rendered In Connection With The Final Due Process Hearing That Concluded On June 10, 2002.

In their Completed Record and Factual Narrative, Plaintiffs present an exhibit titled "Attachment B" that provides a detailed accounting of alleged services provided beginning with an entry for time spent writing a letter on January 3, 1997, to an entry for drafting an amendment to "Itemization of Services and Expenses" on October 10, 2003.  During this period of almost

---

[5] See attached Exhibit "J,"  p. 525-529, and paragraph 10 of Defendant's Response in Opposition to Plaintiffs' Final Statement of Plaintiffs' Claim for Attorney's Fees and Expenses, *supra*.

seven (7) years, Plaintiffs claim a total of 230.23 hours of attorney services provided by David

Sambolin, Esquire ("Attorney Sambolin"), and seek payment for those services in the amount of

$62,882.53.  During that period of time, Attorney Sambolin claims to have spent a total of 33.42

hours in attending eight (8) Due Process Hearings.

Luis P. Diaz, Esquire ("Attorney Diaz"), entered his appearance in this matter on

*September 4, 2003*, although in his Affidavit in the Form of Verification he states that he has

provided legal services on behalf of Plaintiffs and Attorney Sambolin in this matter *"from*

*September 1, 1999, to the present."* [6] Attorney Diaz claims he has provided a total of 89.57

hours of attorney services during the seven (7) week period from September 1, 2003, to October

20, 2003, and seeks payment in the amount of $22,392.50.[7]

Together, Attorney Sambolin and Attorney Diaz request attorneys' fees in the amount of

$85,275.03, for a total of 319.80 hours of attorney legal services.

A review of Attorney Sambolin's itemization reveals that eighty-five percent (85%) (or

196.81 hours) of his total hours of 230.23 were spent outside of Due Process Hearings.  The

33.32 hours spent at Due Process Hearings account for just fifteen percent (15%) of his total

hours.

A review of Attorney Diaz' itemization of professional services is nothing short of

disturbing.  Beginning with his entries for "9/25/03" through "9/30/03", Attorney Diaz seeks to

have Defendant pay attorney fees for a series of motions that this Honorable Court appears to

have deemed frivolous and/or meritless.[8]  More importantly though, are the entries for "9/30/03"

and "10/1/03" where Attorney Diaz seeks to have Defendant *pay him for correcting his own*

---

[6] See, Plaintiffs' Completed Record and Factual Narrative, Attachment C, "Affidavit of Luis P. Diaz, Esq. in the
Form of Verification," para. 2
[7] *Id*., Attachment D, "Itemization of Services and Expenses of Luis P. Diaz, Esq.," p.7.
[8] See, the Court's Order dated October 2, 2003, at attached Exhibit "O."

*mistake in a motion*.  Attorney Diaz incorrectly stated in his Motion "Requesting Time to File a

Rule 56 Motion for Summary Judgment Prior to Trial" that the undersigned had stipulated to

Plaintiffs' Motion.  Attorney Diaz' itemization shows a "9/30/03" entry of "$200.00" for

speaking .80 hours on the telephone with the undersigned and a "10/1/03" entry of *"$400.00"*

*for spending 1.6 hours correcting his own mistake*.  First, the conversation regarding Attorney

Diaz' need to amend his Motion was no more than five (5) minutes, not 48 minutes.  Second, it is

absurd and improper that an attorney would seek to be compensated for the time he spends

rectifying his own allegedly careless mistake in a motion.  The undersigned had stated clearly to

Attorney Diaz, *prior* to him filing the Motion, that Defendant would not stipulate to his Motion

asking for time in which to file a motion for summary judgment.  Yet, in his Motion he wrote:

> Luiz P. Diaz, Esq., on behalf of attorney David Sambolin and the Plaintiffs he
> represents, herewith *requests that this Court honor the stipulation between the*
> *parties* and grant Plaintiffs until October 10th, 2003, to file a Rule 56, Federal
> Rules of Civil Procedure, Motion for Summary Judgment  .   .   ..[9]

Attorney Diaz filed a corrected Motion without the "stipulation" language and acknowledged the

error, for which he now seeks compensation, in a cover letter to the Court.  (See Attorney

Sambolin's letter to the Court dated October 1, 2003, attached hereto and marked as **Exhibit**

**"Q".**)

Attorney Diaz cites Prandini v. National Tea Co., 585 F.2d 47 (3d Cir. 1978), as authority

in support of his request for an award of attorney's fees for his legal services in this matter.

Attorney Diaz' reliance on Prandini is mistaken.  Contrary to his assertion,[10] the holding in

Prandini does not entitle Attorney Diaz to reasonable attorney's fees for representing Attorney

Sambolin and Plaintiffs in this matter.  In Prandini, plaintiff's attorney, in a class action based on

---

[9] Plaintiffs' Motion Requesting Time to File Rule 56 Motion for Summary Judgment Prior to Trial, p. 1.
[10] Plaintiffs' Completed Record and Factual Narrative, at 2, para. (4).

sex discrimination in employment, entered into a fee settlement agreement with defendant. The

District Court however, reduced the agreed upon fee because of duplication of attorney services.

On appeal, the matter was remanded to the district court with instructions for the use of a specific

formula for reducing the fee. On the subsequent appeal after remand, the Third Circuit stated:

> We hold therefore that the appellate attorneys are entitled to be compensated *for time spent successfully appealing the first fee award, and in preparing the fee petition [for the second appeal]*, to the extent that time was reasonably necessary to obtaining a reasonable fee award, a determination to be made in the first instance by the district court.

*Id*., at 54 (citation omitted; emphasis added). The instant case is readily distinguishable from

Prandini. Plaintiffs here did not have a fee settlement agreement with the District. Nor was there

any fee agreement that was subsequently reduced by a court thereby necessitating additional

attorney services to address the modification of an agreement between the parties.

Consequently, Prandini is inapposite to the instant case and Plaintiffs should not receive an

award for attorney's fees for services provided by Attorney Diaz.

Under the specific circumstances of this matter, if any award of attorney's fees is made to

Plaintiffs, the award should be – at most – for the services of Attorney Sambolin from January

15, 2002, through June 10, 2002, which represents 73.22 hours. This time interval covers the

activities of Attorney Sambolin in connection with the last series of Due Process Hearings that

culminated in the closing of the record at the conclusion of the June 10, 2002, hearing. (The

initial hearing before Hearing Officer David Bateman was on January 25, 2002, and was

continued three times, to March 14, 2002, May 20, 2002, and June 10, 2002). Applying an

hourly rate of $287.50[11] to the 73.22 hours yields an amount of $22,229.50.

---

[11] This is Attorney Sambolin's requested rate for the year 2002 as stated in Plaintiffs' Completed Record and Factual Narrative, Attachment B, p.8.

III.    <u>CONCLUSION</u>

Based on the foregoing legal discussion and arguments, Defendant School District of

Philadelphia respectfully requests this Honorable Court to enter judgment in its favor and against

Plaintiffs, finding, as a matter of law, that Plaintiffs are not a "prevailing party" and therefore not

entitled to an award of attorneys' fees.  In the event the Court determines that Plaintiff is a

"prevailing party" and is entitled to an award of attorney's fees, Defendant respectfully requests

the Court to schedule an evidentiary hearing to determine the amount of the award.

RESPECTFULLY SUBMITTED,


_____
C. REGINALD JOHNSON, ESQUIRE
Assistant General Counsel
School District of Philadelphia
Office of General Counsel
2130 Arch Street, 5th Floor
Philadelphia, PA 19103-1390
(215) 299-7676
Attorney for Defendant,
School District of Philadelphia


Dated: <u>October 29, 2003</u>

CERTIFICATE OF SERVICE

C. REGINALD JOHNSON, ESQUIRE, hereby certifies that he caused a true and correct copy of the foregoing Defendant's Challenge to Plaintiffs' Final Statement and Explanation of Attorney's Fees and Expenses Sought and supporting Memorandum of Law to be served this day by hand-delivery upon the following person:

> Luis P. Diaz, Esquire
> 1118 Lombard Street, Suite 5
> Philadelphia, PA 19147
> Attorney for Plaintiffs

_____
C. Reginald Johnson, Esquire
Assistant General Counsel
Attorney for Defendant,
School District of Philadelphia

Dated: October 29, 2003